Argued and submitted May 2, 2014, reversed and remanded February 4, 2015

In the Matter of the Compensation of
Tommy S. Arms, Claimant.

Tommy S. ARMS,
*Petitioner,*

*v.*

SAIF CORPORATION
and Harrington Campbell, Inc.,
*Respondents.*

Workers' Compensation Board
1002902, 1005062; A150954

343 P3d 659

Christine I. Jensen argued the cause and filed the briefs for petitioner.

Julie Masters argued the cause and filed the brief for respondents.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

HADLOCK, J.

## HADLOCK, J.

Claimant suffered a compensable spinal injury at the C5-6 level while working for employer in 2003. He received spinal fusion and discectomy surgery for that condition. While claimant was being treated for that injury, imaging revealed a preexisting degenerative disc disease at the C6-7 level. In 2010, claimant's surgeon recommended discectomy and fusion surgery for the preexisting C6-7 disease. Claimant requested that SAIF, employer's workers' compensation insurer, authorize that surgery, asserting that the 2003 surgery had worsened the C6-7 degeneration. SAIF denied compensability of the proposed surgery. Claimant requested a hearing, asserting that "SAIF should be liable for the medical services pursuant to ORS 656.225 [related to worsening of preexisting conditions] or on the basis of a consequential condition claim." After the hearing, the administrative law judge (ALJ) concluded that ORS 656.225 did not apply under the circumstances and that the proposed surgery was not compensable under a consequential-condition analysis because the preexisting disc disease was the major contributing cause of the C6-7 degeneration. The Workers' Compensation Board adopted the ALJ's opinion and affirmed the denial. Claimant now seeks judicial review of the board's order. We reverse and remand for reconsideration.

The following facts are not in dispute. Claimant was injured while working as a drywall hanger in 2003. Claimant was working on a lift. Another employee accidentally raised the lift, causing claimant's head to hit the ceiling and injuring his neck. Claimant was diagnosed with a "large right C5-6 disc herniation." Imaging studies showed that claimant also had a "mild disc bulge with moderate degenerative disc space narrowing and anterior spurring at C6-7." The condition at C6-7 was the result of natural aging processes and was not related to the work accident. Dr. Kitchel, an orthopedic surgeon, performed fusion and discectomy surgery to correct the C5-6 injury. Claimant filed a workers' compensation claim for right-sided C5-6 disc herniation, which SAIF accepted.

In 2009, claimant began treatment with Dr. Kovacevic, an occupational-medicine physician, for left arm, hip, and

leg pain. A 2010 MRI showed that claimant had degenerative changes at several levels of his cervical spine, including at C6-7, that had progressed since 2003. Kovacevic referred claimant back to Kitchel. Kitchel diagnosed cervical radiculopathy and "[s]tatus post C5-C6 anterior cervical discectomy and fusion with transitional disc degeneration C6-C7." Kitchel believed that the C5-6 surgery was the "major precipitating cause" of the C6-7 disc degeneration and radiculopathy. In a deposition, Kitchel stated that the change at the C6-7 level was greater than he would have anticipated from the aging process alone. He explained that surgically fusing one level of the spine increases the motion and changes the "center of rotation of the motion" at the adjacent level and thereby "accelerate[s] the degeneration and the need for treatment on the adjacent level." Kitchel recommended that claimant's 2003 claim be reopened to allow claimant treatment at the C6-7 level.

In May 2010, Dr. Rosenbaum, a neurosurgeon, performed an independent medical examination of claimant for SAIF. Rosenbaum concluded that the C6-7 condition was "degenerative arthritis of the cervical spine" that preexisted the 2003 work injury and had subsequently worsened consistently with the normal aging process rather than at an accelerated rate. He opined that the 2003 condition and surgery had "not been more than slight contributors to the C6-7 pathology." SAIF denied the compensability of the C6-7 degeneration under the 2003 claim.

The next month, after claimant's symptoms had worsened, Kitchel recommended cervical discectomy and fusion surgery at the C6-7 level. He again asserted that the 2003 surgery had "accelerated claimant's preexisting C6-7 degeneration and had been the major cause of the subsequent pathological worsening of that condition." SAIF denied authorization for the surgery on the ground that it had not accepted claimant's condition at that level. Two weeks later, claimant's attorney asked SAIF to authorize the proposed surgery, stating:

> "Irrespective of the independent compensability of the C6-7 condition, claimant believes that he is entitled to the proposed surgery pursuant to ORS 656.225. His accepted injury (including the fusion performed to address it) is the

major contributing cause of a pathological worsening of claimant's preexisting C6-7 condition. The proposed surgery is prescribed by Dr. Kitchel to treat the change in the preexisting condition that was caused by the fusion's alteration of the cervical spine mechanics."

In August 2010, Kitchel discussed claimant's case with a SAIF representative. Kitchel reiterated that the 2003 surgery was the "major cause of the interval change in [claimant's] degenerative disc disease at C6-7 between 2003 and 2010." However, he agreed with Rosenbaum that "the surgery [was] not the major contributing cause of the actual condition, the degeneration at C6-7 itself." Kitchel believed that "age and genetics are the major cause of the actual condition itself." A few days later, SAIF again issued a denial, asserting that the proposed C6-7 surgery was not compensably related to the accepted C5-6 condition.

The following month, another orthopedic surgeon, Dr. Coletti, conducted an independent medical examination for SAIF. Coletti concluded that both the preexisting degeneration and the 2003 surgery had contributed to claimant's subsequent C6-7 degeneration, but that the age-related degeneration had been the major cause of the C6-7 condition. SAIF continued to deny the compensability of the C6-7 condition and of the proposed surgery.

Claimant requested a hearing on SAIF's denial. In a letter to the director of the Workers' Compensation Division, claimant's attorney stated that "SAIF should be liable for the medical services pursuant to ORS 656.225 or on the basis of a consequential condition claim." At the hearing, claimant conceded that the C6-7 degeneration was not itself a compensable consequential condition but maintained that the proposed surgery was compensable as a medical service under ORS 656.225.[1] SAIF responded that "this is clearly a consequential condition type of case" and noted that claimant had conceded that the condition itself was not compensable because work was not the major contributing cause of the condition. SAIF argued further that, because claimant's condition was properly viewed as a consequential condition, the compensability of medical services was governed by ORS

---

[1] ORS 656.225 is quoted later in this opinion, at 268 Or App 769.

656.245(1)(a), not ORS 656.225. Under ORS 656.245(1)(a), SAIF contended, the surgery was not compensable, because it was not directed to a medical condition caused in major part by the compensable 2003 injury.

The ALJ issued an order affirming SAIF's denial. With respect to claimant's argument under ORS 656.225, the ALJ noted that, "in order to fall within the terms of the statute, the medical services must be directed solely to a preexisting condition." He went on to state, "Where a claimant's surgery is directed to a condition that results from a combination of a preexisting condition and the effects of an accepted condition, the surgery is not solely directed to a preexisting condition and ORS 656.225 does not apply." The ALJ concluded:

"The expert opinions are persuasive to prove that Dr. Kitchel's proposed surgery is directed solely to the C6-7 degeneration. * * * Further, the expert opinion is persuasive to prove that claimant's C6-7 degeneration involves a combination of both his preexisting degenerative arthritic condition at that level and the effects of the 2003 surgery for his accepted C5-6 disc herniation. * * * As a result, Dr. Kitchel's proposed C6-7 surgery is directed to a combined condition rather than solely to a preexisting condition. Therefore, ORS 656.225 does not apply to the compensability of the proposed surgery."

The ALJ also considered the compensability of the surgery as a medical service for a consequential condition under ORS 656.245(1)(a):

"As discussed above, the expert medical opinion evidence is persuasive to prove that Dr. Kitchel's proposed surgery is directed solely to the C6-7 degeneration and, further, that the C6-7 degeneration is a consequential condition. As a result, under ORS 656.245(1)(a), the proposed surgery is only compensable if claimant's compensable 2003 injury has been the major cause of the C6-7 degeneration. The expert medical opinion is not persuasive to so prove. Drs. Rosenbaum, Kitchel, Kovacevic, and Coletti all ultimately conclude instead that the preexisting condition has continued to be the major cause of the C6-7 degeneration."

Claimant requested board review. The board issued an order adopting and affirming the ALJ's order. Claimant

now seeks judicial review, assigning error to the board's upholding of SAIF's denial. Claimant concedes that the board correctly concluded that the surgery is not compensable under a consequential condition analysis, but he reiterates his contention that it is compensable under ORS 656.225.

We review the board's order as provided in ORS 183.482(7) and (8). ORS 656.298(7). ORS 183.482(8) provides, in pertinent part:

"(a) The court may affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, the court shall:

"(A) Set aside or modify the order; or

"(B) Remand the case to the agency for further action under a correct interpretation of the provision of law.

"* * * * *

"(c) The court shall set aside or remand the order if the court finds that the order is not supported by substantial evidence in the record."

As part of our review for substantial evidence, we also review the board's order for substantial reason—that is, we determine whether the board provided a rational explanation of how its factual findings lead to the legal conclusions on which the order is based. *Drew v. PSRB*, 322 Or 491, 500, 909 P2d 1211 (1996).

Although it does not bear directly on the correctness of the board's analysis, we note a disagreement between the parties as to the function of ORS 656.225 and its place in the Workers' Compensation Law. Claimant takes the view that ORS 656.225 creates an entitlement to compensation for medical services for preexisting conditions that are worsened by work conditions or events. SAIF asserts that ORS 656.245(1)(a) is the sole statutory source of entitlement to compensation for medical services, and that ORS 656.225 merely places limits on the compensability of preexisting conditions.

We agree with SAIF. ORS 656.225 does not direct insurers to provide benefits. In contrast, ORS 656.245(1)(a) directs insurers to "cause to be provided medical services

\* \* \*." ORS 656.245(1)(a) itself refers to "the limitations in ORS 656.225," suggesting that ORS 656.225 creates limitations on compensation rather than entitlement to it. The Supreme Court acknowledged as much in *SAIF v. Sprague*, 346 Or 661, 664, 217 P3d 644 (2009), stating that "ORS 656.245(1)(a) incorporates the limitations on compensability of preexisting conditions \* \* \* that are provided in ORS 656.225."

Accordingly, to determine whether claimant is entitled to compensation for the C6-7 surgery, the appropriate starting point is ORS 656.245(1)(a). *See Sprague*, 346 Or at 663 ("ORS 656.245(1)(a) prescribes generally when expenses for medical services are compensable and deals with [ordinary conditions, preexisting conditions, consequential conditions, and combined conditions]."). ORS 656.245(1)(a) provides:

> "For every compensable injury, the insurer or self-insured employer shall cause to be provided medical services for conditions caused in material part by the injury for such period as the nature of the injury or the process of the recovery requires, subject to the limitations in ORS 656.225, including such medical services as may be required after a determination of permanent disability. In addition, for consequential and combined conditions described in ORS 656.005(7), the insurer or the self-insured employer shall cause to be provided only those medical services directed to medical conditions caused in major part by the injury."

Thus, to properly analyze claimant's claim, we must determine first whether claimant has a compensable injury and whether he sought medical services for a condition that was "caused in material part by" that injury. If so, we then consider whether any of the limitations identified in ORS 656.245(1)(a) apply—namely, the limitations set out in ORS 656.225 and the limitations for consequential or combined conditions.

SAIF does not dispute that claimant has a compensable injury (the C5-6 injury) or that he sought medical services (surgery) for a condition (the C6-7 degeneration) that was caused in material part by that injury. Accordingly, the question becomes whether any of the limitations identified

in ORS 656.245(1)(a) preclude compensation for the surgery. The first limitations are those found in ORS 656.225, which provides:

"In accepted injury or occupational disease claims, disability solely caused by or medical services solely directed to a worker's preexisting condition are not compensable unless:

"(1) In occupation disease or injury claims other than those involving a preexisting mental disorder, work conditions or events constitute the major contributing cause of a pathological worsening of the preexisting condition.

"(2) In occupational disease or injury claims involving a preexisting mental disorder, work conditions or events constitute the major contributing cause of an actual worsening of the preexisting condition and not just of its symptoms.

"(3) In medical service claims, the medical service is prescribed to treat a change in the preexisting condition as specified in subsection (1) or (2) of this section, and not merely as an incident to the treatment of a compensable injury or occupational disease."

The board determined that claimant's proposed surgery did not "fall with the terms of" ORS 656.225. In reaching that conclusion, the board emphasized the statutory requirement that the requested "medical services [be] solely directed to a worker's preexisting condition." In this case, the board asserted, "claimant's C6-7 degeneration involves a combination of both his preexisting degenerative arthritic condition at that level and the effects of the 2003 surgery." Based on that premise, the board concluded that the proposed surgery was not "solely directed to a preexisting condition," but instead was directed to a combined condition not covered by ORS 656.225.

The board's reference to a "combined condition" is ambiguous in that context. In our view, that part of the board's order can be read either of two ways. First, the board may have concluded as a legal matter that, whenever a preexisting condition is worsened by work conditions or events, medical services for the worsened condition are not "solely directed" to the preexisting condition and therefore could

only be directed to a combined condition. Alternatively, the board may have concluded as a factual matter that claimant's preexisting condition had combined with the C5-6 injury to form a "combined condition" for which SAIF would be required to provide "only those medical services directed to medical conditions caused in major part by the [compensable C5-6] injury." ORS 656.245(1)(a). As explained below, both of those possible rationales are flawed.

We first address the board's possible conclusion that ORS 656.225 does not apply because, as a matter of law, whenever a preexisting condition is affected by work conditions or events—either by "worsening" of the preexisting condition or by "combination" of the preexisting condition and a compensable injury—the result *always* is a "combined condition" for which medical services need be provided only if the requirements of ORS 656.245(1)(a) are met. Under that view, ORS 656.225 would have little application; indeed, it could apply only to medical services directed to preexisting conditions that were not affected in any way by a claimant's work. Such services are never compensable under the Workers' Compensation Law,[2] so there would be no point in placing limits on compensability, as the legislature did in ORS 656.225(1), (2), and (3). Moreover, ORS 656.225(1) and (2) contemplate medical services for preexisting conditions that are worsened by work conditions or events. If such conditions were screened out by the "solely directed" clause of the statute, as the board's order seems to suggest, subsections (1) and (2) would never apply to anything. If that is how the board interpreted the "solely directed" clause, it erred.

It is possible, however, that the board meant to say only that, in *this* case, the C6-7 degeneration was not a result of "worsening" of the preexisting condition, but rather involved a combination of the preexisting condition and the effects of the 2003 surgery at C5-6. If that is the board's finding, it is not supported by substantial evidence and reason. As we explained in *Luckhurst v. Bank of America*, 167

---

[2] As noted above, the threshold requirement for compensability of medical services is that they be "for conditions caused in material part by" a compensable injury. ORS 656.245(1)(a).

Or App 11, 16-17, 1 P3d 1031 (2000), "for there to be a 'combined condition,' there must be two conditions that merge or exist harmoniously[,] *** rather than one condition made worse" by a work-related injury. *See also SAIF v. Allen*, 193 Or App 742, 745, 91 P3d 808 (2004) (noting that there is a "subtle difference between a condition that results when an injury *aggravates* a preexisting disease, on the one hand, and, on the other, a combined condition, which results when an injury *combines with* a preexisting disease" (emphasis in original)).

None of the doctors who examined claimant opined that his preexisting condition had "combined with" the effects of the 2003 surgery to cause the need for treatment. Rather, they all addressed the relationship between the 2003 surgery and the C6-7 degeneration in terms of the surgery worsening or accelerating the degeneration. Kitchel stated in his deposition that, "if you surgically fuse one level it does seem to accelerate the degeneration and the need for treatment on the adjacent level." Kovacevic stated that it was her understanding that "fusions can accelerate degeneration on the adjacent levels." Coletti stated that "it is probable that there is some worsening of the degenerative changes or hastening of the degenerative change process at C6-7 beyond that which occurred with normal aging due directly to the prior cervical fusion." He also stated that the 2003 surgery "caused the acceleration of pathological worsening at the C5-7 [*sic*] level." Even Rosenbaum, who concluded that the 2003 surgery was not a material contributing cause of claimant's C6-7 condition, discussed the contribution of the 2003 surgery in terms of whether it affected the "speed" at which the C6-7 degeneration progressed and stated that the C6-7 condition had "worsened as would have been expected from age alone since 2003."

The board did not explain how those medical opinions—all of which apparently refer to worsening of claimant's C6-7 degeneration—led it to conclude that the proposed surgery was directed to a combined condition rather than to a worsened preexisting condition. Thus, to the extent that the board's order is based on a factual finding that the surgery was directed to a combined condition, it is not supported by substantial evidence or reason. *See*

*Armstrong v. Asten-Hill Co.*, 90 Or App 200, 206, 752 P2d 312 (1988) (this court will reverse a board order "when the credible evidence apparently weighs overwhelmingly in favor of one finding and the Board finds the other without giving a persuasive explanation").

In addition to defending the board's stated rationale, SAIF offers three alternative arguments in support of its contention that we should affirm the board's order. First, SAIF argues that claimant did not have a preexisting condition within the statutory meaning of that term. *See* ORS 656.005(24)(a) (to qualify as a preexisting condition, a condition must have been treated or diagnosed before the compensable injury, "[e]xcept for claims in which a preexisting condition is arthritis or an arthritic condition"). SAIF notes that claimant's C6-7 condition was not diagnosed or treated before the 2003 work injury, and it asserts that nothing in the record establishes that the condition was arthritic. Next, SAIF seizes on the opening clause of ORS 656.225, "In accepted injury or occupational disease claims," arguing that the statute is inapplicable because claimant's C6-7 condition is not an accepted injury or occupational disease—indeed, SAIF notes, it denied claimant's request to accept the C6-7 condition. Finally, SAIF notes that ORS 656.225 precludes compensation unless "work conditions or events constitute the major contributing cause of a pathological worsening of the preexisting condition." SAIF points out that claimant's condition was worsened by the C5-6 surgery; thus, it argues, claimant's condition was not worsened by "work conditions or events," as ORS 656.225 requires. In its view, "work conditions or events" are "better understood as the direct effects of the industrial accident, rather than the indirect consequences of the compensable injury," such as surgery that was performed to treat the injury.

SAIF urges us to affirm the board's order on one or more of those grounds. We decline to do so. SAIF's first alternative argument—that claimant's C6-7 degeneration was not arthritic and, therefore, was not a statutory "preexisting condition"—conflicts with the board's order, which includes both a finding that claimant had a "preexisting degenerative arthritic condition" at C6-7 and references to physicians' statements that the C6-7 pathology was arthritic. SAIF's

argument that claimant did not have a qualifying preexisting condition does not acknowledge, much less grapple with, those aspects of the board's order. Accordingly, it presents no basis for affirmance.

We also decline to affirm on the basis of the other two alternative arguments that SAIF makes on appeal. Even though SAIF's arguments appear to raise questions of statutory interpretation, we think it appropriate for the board to address those questions in the first instance, as their resolution may be informed by the medical or procedural facts of this case (about which the board may make additional findings on remand) or, possibly, by pertinent administrative rules. In all events, we prefer to have the board's insight on the proper analysis of those questions before we undertake to address them ourselves.

Reversed and remanded.