Argued and submitted October 13, 2015, affirmed April 13, 2016

In the Matter of Compensation of
Richard Elsea, Claimant.

Richard ELSEA,
*Petitioner,*

*v.*

LIBERTY MUTUAL INSURANCE
and Swan Island Sheet Metal Works, Inc.,
*Respondents.*

Workers' Compensation Board
130119M; A156924

371 P3d 1279

Donald M. Hooten argued the cause for petitioner. With him on the briefs was William D. Okrent.

Carrie D. Wipplinger argued the cause and filed the brief for respondents.

Before Sercombe, Presiding Judge, and DeVore, Judge, and Tookey, Judge.*

DEVORE, J.

---

* DeVore, J., *vice* Nakamoto, J. pro tempore.

**DEVORE, J.**

In this case, the question is whether the Workers' Compensation Board erred in determining that claimant is not entitled to benefits for permanent total disability because he has failed to prove that he is willing to seek regular gainful employment. That proof is required by ORS 656.206(3)[1] as construed in *SAIF v. Stephen*, 308 Or 41, 774 P2d 1103 (1989). We review the board's order for errors of law and substantial evidence, ORS 656.298; ORS 183.482(7) and (8). We conclude that the board did not err, and we affirm.

Claimant worked in the sheet metal industry for his entire career, from 1974 through 2009. Claimant experienced the first work-related injury to his right knee in December 1991, while working for Liberty's insured, Swan Island Sheet Metal Works, Inc. He obtained workers' compensation benefits for a medial cartilage tear. Through the years, claimant suffered multiple compensable injuries to both of his knees.

In February 2009, doctors diagnosed degenerative joint disease in the right knee. Claimant also developed degenerative joint disease in the left knee, but only the right knee is at issue in this claim for permanent and total disability. In June 2009, claimant complained to Dr. Austin, his attending physician, that work was becoming increasingly difficult due to pain in both knees, which was worse with prolonged walking and heavy lifting. In September 2009, Austin imposed work restrictions on claimant to avoid aggravating activities.

In January 2010, at the age of 55, claimant took disability retirement, and, in September 2010, he began receiving Social Security Disability Insurance benefits.

Because claimant continued to experience knee pain, he returned to Austin for treatment in March 2012.

---

[1] ORS 656.206(3) provides:

"The worker has the burden of proving permanent total disability status and must establish that the worker is willing to seek regular gainful employment and that the worker has made reasonable efforts to obtain such employment."

Austin gave steroid injections to the right knee, noting that claimant might eventually require bilateral knee replacement surgery. In October 2012, Austin diagnosed "moderate osteoarthritic/degenerative joint disease" in the right knee.[2]

In January 2013, claimant requested that Liberty accept a new/omitted medical condition claim for osteoarthritis/degenerative joint disease of the right knee, related to the December 1991 injury. Liberty accepted the claim, and the board authorized a reopening of the claim on its own motion as a new/omitted condition relating to the right knee.[3]

In August 2013, Dr. Kounine became claimant's attending physician. She initially focused on the left knee and recommended a total left knee replacement, but claimant was not interested in further intervention at that time.

In October 2013, Kounine opined that claimant's right knee was medically stationary. On October 15, 2013, Liberty closed the claim for the right knee with an additional award of permanent partial disability benefits. Claimant requested review by the board, seeking benefits for permanent total disability or increased permanent partial disability.

Kounine provided an opinion about claimant's impairment, describing significant physical limitations as a result of claimant's right knee condition. Kounine opined that claimant's lifting or carrying is permanently restricted to 10 to 20 pounds, the latter only occasionally. She reported that claimant is restricted from any kneeling, stooping, climbing, stairs, twisting, or crawling and that he would require changes of position if he were on his feet for extended periods. Kounine advised that, as of the time of claim closure, claimant could not be on his feet for more than two hours in an eight-hour stretch and could not return to his job at the time of his injury as a journeyman sheet metal worker.

---

[2] Claimant also continued to experience pain and undergo treatment for the left knee.

[3] By the time claimant filed his new/omitted condition claim for the right knee, his aggravation rights on his 1991 claim, first closed in July 1991, had expired. The board therefore reopened claimant's claim under its "own motion" jurisdiction, ORS 656.278(1).

In December 2013, claimant was evaluated by Stipe, a vocational consultant, who assessed claimant's employability. Considering claimant's physical restrictions and additional limitations of age, work history, education, aptitudes, interests, lack of transferrable skills, Stipe opined that claimant was unable to access gainful employment.

The board increased claimant's award of permanent partial disability, but rejected his request for permanent total disability, reasoning, in part, that claimant had not established a willingness to seek work, as required by ORS 656.206(3). On judicial review, claimant challenges that determination, contending that the board committed legal error in its analysis, but not directly contending that the board's conclusions lack substantial evidence.

We begin with an overview of the requirements for establishing permanent total disability. "Permanent total disability" is defined in ORS 656.206(1)(d) as "the loss, including preexisting disability, of use or function of any scheduled or unscheduled portion of the body which permanently incapacitates the worker from regularly performing work at a gainful and suitable occupation."

A claimant has the burden of establishing permanent total disability, ORS 656.206(3), and may do so by proving either that the claimant is completely physically disabled and thereby precluded from gainful employment *or* that the claimant's physical impairment, combined with social and vocational factors, effectively prohibits gainful employment. Under the so-called "odd lot" doctrine, a person who is not totally disabled from a medical standpoint may nonetheless be permanently totally disabled due to a combination of physical conditions and certain nonmedical factors, including age, education, adaptability, mental capacity, and emotional conditions. *See Clark v. Boise Cascade Corp.*, 72 Or App 397, 399, 695 P2d 967 (1985). The determination of total disability under the odd-lot doctrine turns on whether the claimant "is currently employable or able to sell his services on a regular basis in a hypothetically normal labor market." *Harris v. SAIF*, 292 Or 683, 695, 642 P2d 1147 (1982); *Bruce v. SAIF*, 149 Or App 190, 194, 942 P2d 789 (1997) (same). Disability is to be evaluated as of the date of the notice of closure. ORS 656.268.

In this case, it is undisputed that claimant was not totally disabled from a medical standpoint at the time of claim closure. His claim for permanent total disability, therefore, proceeds under the odd-lot doctrine upon the contention that he is not currently employable or able to sell his services on a regular basis in a hypothetically normal labor market. *Id.*

To be eligible for benefits for permanent and total disability, a worker must satisfy the technical requirement of being "in the work force."[4] *Stephen*, 308 Or at 46. Even a worker who asserts that he is totally disabled must satisfy the requirements of ORS 656.206(3), which provides:

"The worker has the burden of proving permanent total disability status and must establish that the worker is willing to seek regular gainful employment and that the worker has made reasonable efforts to obtain such employment."

The Supreme Court restated the requirements in *Stephen*:

"Thus, before a claimant is entitled to [permanent total disability] he or she must establish that, but for the compensable injury, he or she (1) is or would be willing to seek regular gainful employment and (2) has or would have made reasonable efforts to obtain such employment."

308 Or at 47-48. The first of the two requirements will become key to this case.

To be sure, a worker who is so disabled that he or she cannot work is not required to prove the impossible. As the court stated in *Stephen*:

"A claimant who is so incapacitated that he or she cannot perform regular gainful employment need not establish that he or she 'has made reasonable efforts to obtain such employment' because seeking such work would be futile.

---

[4] *See also* ORS 656.005(30), defining "worker" and stating that, for the purpose of determining entitlement to temporary disability benefits or permanent total disability benefits, "worker" does not include a person who has withdrawn from the workforce during the period for which such benefits are sought. We note that the amendment to ORS 656.005(30) enacting that requirement applies only to claims made on or before January 1, 1990, and, therefore does not apply to this case; but, substantively, the statute represents a codification of the requirement set forth in *Stephen* that to be eligible for permanent total disability benefits, a person must be in the work force at the time benefits for permanent total disability are sought. *Stephen*, 308 Or at 46-47.

ORS 656.206(3) was not intended to require claimants to engage in such a useless act. *See Cutright v. Weyerhaeuser Co.* [299 Or 290, 307, 702 P2d 403 (1985) (Lent, J., dissenting)]. *Such a claimant, however, must establish that he or she, but for the compensable injury, is or would be willing to seek regular gainful employment."*

308 Or at 48 (emphasis added). Put another way, a worker, like claimant, who is retired, may be able to satisfy the requirement of being "in the work force" by showing that, but for the compensable injury, the worker has or would have made reasonable efforts to obtain such employment. But, even if seeking work would be futile, the worker must still show that, but for the compensable injury, the worker is or would be *willing* to seek regular gainful employment. *Id.*

In *Stephen,* the evidence supported the determination that any attempt by the claimant to locate work would have been futile, but the court nonetheless remanded the case to the board for it to determine, in the first instance, whether the claimant's disability resulting in an inability to seek work was the result of the compensable injury or some nonwork-related cause. *Id* at 48. Both the worker's inability to work and the futility to seek work must be the result of the compensable injury. *Id.*

In this case, claimant argued to the board that, under the odd-lot doctrine, the combination of claimant's physical limitations and nonphysical characteristics make him unable to work. He argued that he had made a reasonable effort to seek work and that due to a combination of physical limitations and nonphysical characteristics, any effort to seek work would be futile. As evidence, he offered his own affidavit, attesting:

> "I am willing to seek regular gainful employment and have made such reasonable efforts to obtain such employment. I applied for a job through the union for metal sheet workers and for other jobs but have not secured employment. On account of my right knee condition, restrictions, age, education, and adaptability to nonphysical labor, trying to obtain suitable and gainful employment is futile."

The board deemed that it was unnecessary to resolve all of the considerations whether claimant was disabled

under the odd-lot doctrine. The board reasoned that, even if claimant had established that it would be futile to seek work, his affidavit, although uncontroverted, did not persuade the board that he was both willing to seek work and had made reasonable efforts to obtain employment. The board explained:

> "Here, claimant submitted a December 11, 2013, affidavit, attesting, in part, that he was willing to seek regular gainful employment and had made reasonable efforts to find such employment, asserting that he had applied for 'a job through the union for sheet metal workers and for other jobs' but had not secured employment. * * * Claimant also asserted that trying to obtain suitable and gainful employment was futile due to his right knee condition, restrictions, age, education, and adaptability to nonphysical labor. * * *

> "The record lacks corroboration regarding claimant's assertion that he has made reasonable efforts to obtain employment. In this regard, there is no information regarding the number, or dates, of such applications or the names of the potential employers for these 'other jobs.' Nor is there any corroboration regarding any of these matters; *e.g.*, copies of job applications/responses.

> "Moreover, even if claimant can establish that a work search would be futile, he must nevertheless prove that, *but for the compensable injury*, he is *willing to work, Stephen*, 308 Or at 48 * * *. In other words, a finding of futility alone is not sufficient to support an award of [permanent total disability] benefits because a finding that claimant is *willing to work* is a prerequisite to entitlement to such benefits. * * *

> "As noted above, claimant withdrew from the work force several years ago. Specifically, when he requested acceptance of the 'post-aggravation rights' new/omitted medical condition ('osteoarthritis/degenerative joint disease of the right knee'), *he had already been out of the work force three years* * * *. Under these particular circumstances, claimant's affidavit, without corroboration, does not establish that he reentered the work force or was otherwise willing to work.

> "Accordingly, the record does not *persuasively establish* that the requirements under ORS 656.206(3) (2005) have

been satisfied. Consequently, claimant is not entitled to permanent total disability benefits."

(Emphases added.) For those reasons, the board denied an award of permanent total disability benefits.

On judicial review, claimant contends that the board should have first considered whether it would have been futile for claimant to look for work, because that determination would have obviated the need for claimant to show that he had made reasonable efforts to obtain work. Claimant contends that, by requiring that claimant's affidavit about his willingness to work be corroborated with evidence of his reasonable efforts to find work, the board erroneously conflated the "reasonable efforts" and "willingness to seek work" requirements.

We read the board's order differently than claimant does. Under *Stephen* and ORS 656.206(3), a worker who seeks to establish entitlement to permanent total disability must establish both a willingness and reasonable efforts to seek work. As claimant correctly notes, when it would be futile for the claimant to seek work, the claimant need not make a showing of reasonable efforts. *Stephen*, 308 Or at 48. We agree with claimant that a determination of futility by the board would have obviated the need for the board to determine whether claimant had made reasonable efforts to obtain employment. But there is a second requirement.

Even when reasonable efforts to seek work would be futile, the worker must still demonstrate a willingness to seek work. *Id.* (the worker "must establish that he or she, but for the compensable injury, is or would be willing to seek regular gainful employment"). The board's decision turned on the requirement to prove a "willingness to seek work." The board explained that, in light of claimant's three years of retirement before the new/omitted condition claim arose, claimant's uncorroborated affidavit regarding his willingness to seek work was not, in and of itself, enough to "persuasively establish" a willingness to work. Contrary to claimant's contention, the board did not conflate the two requirements or determine that an affidavit regarding willingness to seek work must be corroborated with evidence of efforts to obtain work. The board explained, simply, that

"[u]nder these particular circumstances" claimant's affidavit that he was willing to seek work, without more, was not sufficient to persuade the board.

In evaluating a claim under its own motion authority, the board necessarily must weigh and assess the sufficiency of the claimant's evidence to meet his burden of proof. The board's conclusion that claimant had not met his burden to show a willingness to seek work was based on the board's own weighing of the evidence. The board could view claimant's three-year absence from the job market as a fact that demonstrates an unwillingness to work even before the new/omitted condition. The board could find claimant's bare assertion that he was now willing to seek work to be unpersuasive. Given the contrary evidence from claimant's long absence from the work force, the board could disbelieve claimant's statement in his affidavit that he was willing to seek work but for his compensable injury. It was legally permissible for the board to make that determination in its weighing of the evidence. *See Martin v. City of Portland*, 178 Or App 505, 510, 37 P3d 209 (2001) ("It is the factfinder's job to weigh the various pieces of evidence and testimony presented, and the Board's rejection of claimant's argument on the ground that the proffered evidence was not persuasive does not constitute an error of law."). For that reason, we cannot conclude that the board erred as a matter of law in determining that claimant did not "persuasively establish" his willingness to seek work.

To the extent that claimant challenges the sufficiency of the evidence with respect to the board's conclusion, we conclude that such a challenge is unavailing. In reviewing the board's order, we are not to reweigh the evidence or to substitute our judgment for that of the board as to any issue of fact supported by substantial evidence. *See* ORS 656.298(7) (we review final order of the board as provided in ORS 183.482(7) and (8)); ORS 183.482(7) ("Review of a contested case shall be confined to the record, and the court shall not substitute its judgment for that of the agency as to any issue of fact or agency discretion."); *Garcia v. Boise Cascade Corp.*, 309 Or 292, 295, 787 P2d 884 (1990); *SAIF v. Pepperling*, 237 Or App 79, 84-85, 238 P3d 1013 (2010) ("In reviewing the board's evaluation of [an expert's] opinion,

we do not substitute our judgment for that of the board; rather, we determine whether the board's evaluation of that evidence was reasonable."); *Armstrong v. Asten-Hill Co.*, 90 Or App 200, 206, 752 P2d 312 (1988) (same). If the board's finding is reasonable in the light of countervailing as well as supporting evidence, then the finding is supported by substantial evidence. *Garcia*, 309 Or at 295. In making the finding whether claimant was willing to work, the board was permitted to consider claimant's three-year absence from the job market and the board could reasonably find that claimant's bare assertion that he was willing to seek regular work was not persuasive. The board was free to disbelieve claimant's uncorroborated assertion and conclude that claimant had not met his burden.

Finally, claimant makes a related argument that the board erred as a matter of law in determining that claimant withdrew from the work force when he took medical retirement in 2010 due to disability. Claimant nonetheless concedes that, even if he is not treated as having withdrawn from the work force, he must still establish a current willingness to seek work under ORS 656.206(3). In light of our affirmance of the board's determination that claimant had not persuasively established a willingness to seek work, we need not say more to address claimant's argument.

In sum, the board did not err in denying permanent total disability benefits.

Affirmed.