Argued and submitted January 12; penalty and award of attorney fees reversed and remanded, otherwise affirmed November 3, 2021; petition for review allowed April 7, 2022 (369 Or 507)
See later issue Oregon Reports

In the Matter of the Compensation of
Hipolito Coria, Claimant.

SAIF CORPORATION
and Trimark Salem Hospitality LLC,
*Petitioners,*

*v.*

Hipolito CORIA,
*Respondent.*

Workers' Compensation Board
1804334; A171764

500 P3d 42

Petitioners SAIF Corporation (SAIF) and Trimark Salem Hospitality LLC seek judicial review of an order by the Workers' Compensation Board (board), assigning error to (1) the board's conclusion that SAIF's termination of claimant's temporary total disability (TTD) benefits was unreasonable; and (2) the board's assessment of a penalty and penalty-related attorney fees against SAIF under ORS 656.262(11). On review, petitioners argue that (1) the board's conclusion "was not supported by substantial evidence and reason"; (2) SAIF had "legitimate doubt" about its liability to claimant for TTD benefits, and that the board, therefore, improperly applied ORS 656.262(11)(a); (3) even if the evidence was insufficient to conclude that employer terminated claimant for disciplinary reasons, ORS 656.262(11) does "not permit the board to assess a penalty against the insurer under an imputed knowledge theory"; and (4) *Anfilofieff v. SAIF*, 52 Or App 127, 627 P2d 1274 (1981), "is patently wrong and should be overruled." *Held*: The board did not err in reinstating claimant's TTD benefits. The Court of Appeals concluded that *Anfilofieff* was distinguishable and did not reach petitioners' argument that it should be overruled. The board did err, however, when it concluded that SAIF's discontinuation of claimant's TTD benefits subjected SAIF to penalties under ORS 656.262(11)(a).

Penalty and award of attorney fees reversed and remanded; otherwise affirmed.

Beth Cupani argued the cause and filed the briefs for petitioners.

Martie L. McQuain argued the cause for respondent. Also on the brief was Moore & Jensen.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Mooney, Judge.

MOONEY, J.

Penalty and award of attorney fees reversed and remanded; otherwise affirmed.

**MOONEY, J.**

Petitioners SAIF Corporation (SAIF) and Trimark Salem Hospitality LLC (Trimark)[1] seek judicial review of an order of the Workers' Compensation Board (board), which concluded that SAIF was not authorized to terminate claimant's temporary total disability (TTD) benefits, that SAIF's termination of those benefits was unreasonable, and that assessed a penalty and penalty-related attorney fees against SAIF under ORS 656.262(11).

SAIF raises two assignments of error. First, it assigns error to the board's conclusion that there was "insufficient evidence [for the administrative law judge (ALJ)] to conclude that claimant was discharged for violation of a work rule or for other disciplinary reasons." SAIF argues that the board's conclusion on review "was not supported by substantial evidence and reason." Second, SAIF assigns error to the board's assessment against it of a penalty and penalty-related attorney fees, specifically arguing that it had "legitimate doubt" about its liability to claimant for TTD benefits, and that the board, therefore, improperly applied ORS 656.262(11)(a) to it. SAIF also argues that, even if the evidence was insufficient to conclude that employer terminated claimant for disciplinary reasons, ORS 656.262(11) does "not permit the board to assess a penalty against the insurer under an imputed knowledge theory." SAIF argues that *Anfilofieff v. SAIF*, 52 Or App 127, 627 P2d 1274 (1981), "is patently wrong and should be overruled." For the reasons set forth below, we conclude that the board did not err in reinstating claimant's TTD benefits. The board did err, however, when it concluded that SAIF's discontinuation of claimant's TTD benefits subjected SAIF to penalties under ORS 656.262(11)(a). We affirm the board's order continuing TTD benefits, and we reverse the ordered penalty and related attorney fee award.

The facts are drawn from the board's order, which adopted and supplemented the ALJ's findings. Except as

---

[1] Petitioners SAIF and Trimark appear together, through the same attorney, and request the same relief. In general, we refer to petitioners jointly as "SAIF." Occasionally, the context requires us to refer separately to Trimark and, when we do, the distinction will become evident.

noted below, those facts are not in dispute. The procedural facts, also not in dispute, are intertwined with the historical facts, and we state them together. Claimant was employed by Trimark as a hotel maintenance worker. One of his duties was to monitor chemical levels in the hotel swimming pool. In April 2018, claimant's coworker, Espino, discovered that there were discrepancies in the pool maintenance records and that the amount of testing powder remaining in storage was more than would be expected given the required frequency for such testing. Espino reported his concerns to Holmes, the hotel manager, who requested that Espino continue to check the readings and report back if he found further discrepancies. Holmes did not speak with claimant about Espino's report and he did not discipline claimant at that time.

On June 10, 2018, claimant fell from a ladder at work and was injured. Claimant reported his injury to Holmes, who argued with him about the fall, and claimant completed an accident report that day. Three days later, on June 13, 2018, after noticing that his timecard was missing, claimant, whose first language is Spanish, approached and spoke with Holmes. The assistant general manager, Rodriguez, was present and interpreted the conversation for Holmes and claimant. Claimant was told that his employment was terminated and that his services were no longer needed. We note that there is a dispute about whether claimant was given a reason for his termination during that discussion. He testified that he was not given an explanation. Rodriguez testified that she gave claimant a letter explaining the reasons for his termination and that she translated the termination letter for him.

On June 15, 2018, claimant sought medical treatment for his work injury. On July 27, claimant's physician approved a modified job description and indicated that claimant was physically able to perform that job. SAIF paid claimant TTD benefits from June 17 through July 30. SAIF received information from Trimark that claimant had been terminated from employment for disciplinary reasons and that Trimark would otherwise have offered claimant a modified work position. On August 31, 2018, SAIF sent claimant

a letter advising him that his TTD benefits had been terminated as of July 31, because Trimark had suitable work that it would have made available to claimant if he had not been terminated for a violation of work rules.

SAIF discontinued claimant's TTD benefits pursuant to ORS 656.325(5)(b), which provides:

> "If the worker has been terminated for violation of work rules or other disciplinary reasons, the insurer or self-insured employer shall cease payments pursuant to ORS 656.210 and commence payments pursuant to ORS 656.212 when the attending physician or nurse practitioner authorized to provide compensable medical services under ORS 656.245 approves employment in a modified job that would have been offered to the worker if the worker had remained employed, provided that the employer has a written policy of offering modified work to injured workers."

Claimant requested a hearing before an ALJ. At that hearing, Rodriguez testified that claimant had been given a signed termination letter explaining that he was being terminated because of pool record inaccuracies and refusing to perform daily job duties. She testified further that she had translated that letter for claimant. Trimark was not able to locate a copy of the letter and it was not introduced into the record. Rodriguez was unsure who made the decision to terminate claimant. She thought that it might have been Holmes but, in any event, Rodriguez testified that she did not make that decision. Holmes did not testify. Espino testified about the pool log discrepancies that he reported in April 2018, and claimant acknowledged in his testimony that the pool records that he created were, in fact, false. Evidence of Trimark's progressive disciplinary policy was introduced, but the record contains no evidence of whether claimant's termination occurred pursuant to that policy, an exception to that policy, or through some other process.

The ALJ sustained SAIF's denial of benefits, concluding that,

> "while other factors may have contributed to its decision, the preponderance of the evidence supports a conclusion that claimant's employment was terminated for disciplinary reasons."

And, because of that, the ALJ concluded that claimant was no longer entitled to TTD benefits and upheld SAIF's decision to discontinue those benefits.

Claimant then appealed the ALJ's order, arguing to the board that there was insufficient evidence to conclude that he had been discharged for disciplinary reasons. The board found that there was insufficient evidence in the record to support Trimark's decision to terminate claimant's employment as discipline for violation of a work rule. The board considered several factors in reaching its decision: The record does not contain a copy of the letter that Rodriguez gave to claimant explaining the reason for termination; the record contains no other documents reflecting the reasons for claimant's termination; there was no evidence establishing Trimark's use of its progressive disciplinary policy; and, importantly, there was no testimony from the person who made the decision to terminate claimant's employment. The board also noted the gap in time between April 2018, when hotel management was notified of discrepancies in the swimming pool log, and mid-June 2018, when claimant was terminated, just three days after his on-the-job injury. The board reasoned that the failure to offer an explanation for that gap in time "undermine[d] SAIF's position that [claimant] was terminated for falsifying pool maintenance logs." The board reversed the ALJ's order, concluding that

> "there is insufficient evidence to conclude that claimant was discharged for violation of a work rule or for other disciplinary reasons."

Claimant further argued that, because he had not been terminated for disciplinary reasons, ORS 656.325 (5)(b) did not apply. And, because ORS 656.325(5)(b) did not apply, claimant asserted, SAIF's termination of his benefits was "unreasonable" under ORS 656.262(11)(a), and he requested that a penalty and penalty-related attorney fees be awarded.

The board agreed that "SAIF's termination of claimant's TTD benefits was unreasonable." Specifically, the board found that

> "the statutory prerequisite for ceasing TTD benefits under ORS 656.325(5)(b) has not been established. Because the

record does not identify any other basis for authorizing the termination of claimant's TTD benefits, we conclude that SAIF unreasonably resisted payment of claimant's TTD benefits."

Relying on its own case law, the board awarded a penalty and penalty-related attorney fees under ORS 656.262(11)(a), on the legal theory that Trimark's reason for terminating claimant's employment is imputed to SAIF, as Trimark's insurer. The primary issue raised by SAIF's petition for review is whether the imputed knowledge theory was properly applied by the board.

We review the board's order for errors of law, ORS 183.482(8)(a), and for substantial evidence, ORS 183.482 (8)(c), restricting our review to the record. ORS 183.482(7). "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make the finding." ORS 183.482(8)(c). Our review for substantial evidence necessarily includes reviewing the board's order for substantial reason, because that is how "we determine whether the board provided a rational explanation of how its factual findings lead to the legal conclusions on which the order is based." *Arms v. SAIF*, 268 Or App 761, 767, 343 P3d 659 (2015). A finding is supported by substantial evidence and reason when it "is reasonable in the light of countervailing as well as supporting evidence[.]" *Elsea v. Liberty Mutual Ins.*, 277 Or App 475, 484, 371 P3d 1279 (2016).

We reject SAIF's first assignment of error with this brief explanation. The parties agree that, while the reasonableness of an employer's decision to terminate an employee from his or her job is beyond the board's purview, the board may nevertheless determine whether the claimant was, in fact, terminated for disciplinary reasons. Indeed, it must do so here, because the statute on which SAIF relied to terminate benefits only applies if Trimark terminated claimant for disciplinary reasons. We understand the board's statement that the record contains "insufficient evidence to conclude that claimant was discharged for violation of a work rule or for other disciplinary reasons" to reflect its view that SAIF failed to produce sufficient evidence that its decision to discontinue claimant's TTD benefits was based on a disciplinary termination.

Our task on review of the board's order is, of course, to determine whether the board's order is supported by substantial evidence and reason. We conclude that it was. The board acknowledged Rodriguez's testimony that she gave claimant a letter that explained he was being terminated for maintaining false pool logs and refusing to perform daily tasks. Noting that claimant disputed that testimony, the board walked through the record, observing that the termination letter was not in evidence, that there was no testimony from the person who decided to terminate claimant, that there was no evidence explaining why the progressive discipline policy was not followed, and that there was no explanation as to why the termination occurred nearly three months after the pool log issue was identified and only three days after claimant was injured. In particular, the board reasoned that the unexplained timing of the termination "undermines" SAIF's position that claimant was terminated for falsifying pool logs. Based on the evidence, we conclude that the board was entitled to reach the conclusion that claimant was not terminated for disciplinary reasons. Thus, the board correctly held that SAIF incorrectly terminated claimant's benefit for TTD. We reject SAIF's first assignment of error without further discussion.

SAIF assigns error to the board's decision to assess a penalty and related fees against it under ORS 656.262 (11)(a), arguing that the board incorrectly "imputed the employer's conduct to SAIF, finding that SAIF unreasonably resisted the payment of compensation." SAIF reasons that "the board found no unreasonable conduct" on the part of Trimark and, therefore, "the imputed knowledge theory has no application," making this case distinguishable from *Anfilofieff*. Referring to *Dustin E. Hall*, 68 Van Natta 1615, 1617 (2016), claimant responds that, "[u]nder well settled case law, employer knowledge is imputed to the insurer." As we explain below, *Anfilofieff* is distinguishable and we do not reach SAIF's argument that it should be overruled.

The standard for determining whether SAIF acted reasonably when it discontinued claimant's TTD benefits under ORS 656.325(5)(b) is "whether, from a legal standpoint, [SAIF] ha[d] a legitimate doubt as to its liability."

*Travelers Ins. Co. v. Arevalo*, 296 Or App 514, 523, 437 P3d 1153 (2019). Unreasonableness and legitimate doubt are to be "considered in the light of all the evidence available to the insurer." *Hamilton v. Pacific Skyline, Inc.*, 266 Or App 676, 681, 338 P3d 791 (2014) (citing *Brown v. Argonaut Insurance Company*, 93 Or App 588, 591, 763 P2d 408 (1988)). If SAIF had legitimate doubt about its liability to pay TTD benefits, then it did not act unreasonably in discontinuing claimant's benefits, even when that decision turned out to be incorrect.

ORS 656.325(5)(b) states, in part, that, when "the worker has been terminated for *violation of work rules or other disciplinary reasons*, the insurer or self-insured employer shall cease [temporary total disability payments]" and recalculate the time loss payments. (Emphasis added.) ORS 656.262(11)(a) provides that,

> "[i]f the insurer or self-insured employer unreasonably delays or *unreasonably refuses* to pay compensation * * * the insurer or self-insured employer shall be liable for an additional amount up to 25 percent of the amounts due plus any attorney fees assessed under this section."

(Emphasis added.) A refusal to pay is reasonable when the insurer possesses "legitimate doubt" about its liability to pay a claim. *International Paper Co. v. Huntley*, 106 Or App 107, 110, 806 P2d 188 (1991). That reasonableness is measured by the evidence available to the insurer at the time that it discontinued TTD benefits. *Hamilton*, 266 Or App at 680.

The board concluded that "SAIF unreasonably resisted the payment of claimant's" benefits because the "statutory prerequisite" for terminating TTD benefits under ORS 656.325(5)(b) (termination for disciplinary reasons) was not established and because there was no evidence identifying any "other basis for authorizing the termination" of those benefits. The board referred to its opinion in *Peggy J. Baker*, 49 Van Natta 40 (1995), noting that, in that case, the "carrier's unreasonable failure to pay TTD benefits was assessed because the carrier was legally imputed with the employer's knowledge and conduct regarding the unsupported reasons for the claimant's employment termination." It then imposed a penalty under ORS 656.262(11)(a).

*Peggy J. Baker* relied on *Anfilofieff,* in which we construed ORS 656.262(8) (1973), *amended by* Or Laws 1981, ch 535, § 7; Or Laws 1981, ch 854, § 16; Or Laws 1983, ch 816, § 7; Or Laws 1990, ch 2, § 15; Or Laws 1995, ch 332, § 28; Or Laws 2003, ch 756, § 1; Or Laws 2005, ch 26, §§ 9, 10; Or Laws 2009, ch 526, § 1; Or Laws 2015, ch 521, § 2, the predecessor to ORS 656.262(11)(a), and *Nix v. SAIF*, 80 Or App 656, 723 P2d 366, *rev den*, 302 Or 158 (1986). We affirmed penalties against SAIF under that predecessor statute in *Anfilofieff,* where the employer had falsely claimed that the claimant was not working when the injury occurred, and in *Nix*, where the employer delayed reporting the accident contrary to the reporting statute. We concluded, essentially, that penalties were authorized against the insurer "to the extent unreasonable conduct of a contributing or noncontributing employer causes or contributes to the delay or refusal of compensation." *Anfilofieff*, 52 Or App at 135.

The Supreme Court recently mentioned *Anfilofieff* and *Nix* in *DCBS v. Muliro*, 359 Or 736, 380 P3d 270 (2016). The court explained that those cases provide a "basic formula: unreasonable conduct by an employer designed to impede the claims process plus an employer's obligation to process claims equals attribution of the employer's misconduct to its insurer in certain circumstances." *Id.* at 752. The court noted further that it was not deciding "the validity" of the *Anfilofieff* and *Nix* formula, and it concluded that, in any event, *Anfilofieff* and *Nix* were not helpful to it, because they concerned a different statute and because "[e]mployer misconduct [was] absent from [*Muliro*]." *Id.*[2]

---

[2]  In explaining why notice under ORS 656.210(2)(b)(A) would not be imputed from the employer to the workers' compensation insurer, *Muliro* also noted that ordinary principles of agency law permit knowledge of an agent to be imputed to the principal—not from the principal to the agent. 359 Or at 752. Although *Muliro* concerned a different statute, that point is helpful here. ORS 656.210(2)(b)(A) makes an employee's eligibility to be paid certain benefits contingent on whether "the insurer *** receives *** notice" within a certain time frame. Here, ORS 656.262(11)(a) imposes liability for penalties on an insurer "[i]f the insurer *** unreasonably delays or unreasonably refuses to pay[.]" Here, as in *Muliro*, the employer is the principal and the insurer is the agent. The statutory provisions at issue in each case are different in their coverage, but each statute requires *the insurer* (agent) to either receive something or to do something, independent of *the employer* (principal). That being the case, application of the imputed knowledge doctrine simply does not make sense.

Here, the board did not find that Trimark terminated claimant's employment in retaliation for his filing a workers' compensation claim or that it otherwise acted unreasonably or engaged in any sort of misconduct. It found only that "the statutory prerequisite for ceasing TTD benefits under ORS 656.325(5)(b) has not been established" and that "the record does not identify any other basis" for discontinuing TTD benefits. That is not the same as finding employer misconduct in the claims process. The erroneous termination of benefits is not, *ipso facto*, evidence of misconduct. Additionally, the absence of a finding about why claimant was terminated is not itself evidence of employer misconduct. The absence of a finding of employer misconduct distinguishes this case from *Anfilofieff* and *Nix* and leads us to conclude that there is no misconduct to attribute to SAIF. The board therefore erred in assessing a penalty and attorney fees under ORS 656.262(11).

Penalty and award of attorney fees reversed and remanded; otherwise affirmed.