No. 10 April 20, 2023 1

IN THE SUPREME COURT OF THE
STATE OF OREGON

In the Matter of the Compensation of
Hipolito Coria, Claimant.
SAIF CORPORATION
and Trimark Salem Hospitality LLC,
*Respondents on Review,*

*v.*

Hipolito CORIA,
*Petitioner on Review.*
(WCB 1804334) (CA A171764) (SC S069155)

On review from the Court of Appeals.*

Argued and submitted September 23, 2022.

Julene M. Quinn, Beaverton, argued the cause and filed the briefs for petitioner on review.

Beth Cupani, Appellate Counsel, SAIF Corporation, Salem, argued the cause and filed the brief for respondents on review.

James S. Coon, Thomas, Coon, Newton & Frost, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

Before Flynn, Chief Justice, and Duncan, Garrett, Bushong, and James, Justices, and Landau and Balmer, Senior Judges, Justices pro tempore.**

DUNCAN, J.

The decision of the Court of Appeals is reversed. The order of the Workers' Compensation Board is reversed, and

_____

\* On judicial review from a final order of the Workers' Compensation Board. 315 Or App 546, 500 P3d 42 (2021).

\*\* Walters, J., retired December 31, 2022, and did not participate in the decision of this case. Nelson, J., resigned February 25, 2023, and did not participate in the decision of this case. DeHoog, J., did not participate in the consideration or decision of this case.

the case is remanded to the Workers' Compensation Board for further proceedings.

Bushong, J., concurred and filed an opinion.

## DUNCAN, J.

In this workers' compensation case, claimant Coria seeks review of the Court of Appeals' decision reversing a penalty that the Workers' Compensation Board imposed on respondent SAIF for unreasonable claims processing. The board imposed the penalty pursuant to ORS 656.262(11)(a), which provides, in part, that, if an "insurer * * * unreasonably refuses to pay compensation," the insurer "shall be liable for an additional amount up to 25 percent of the amounts then due," plus penalty-related attorney fees.

On review, the parties disagree about the board's reason for imposing the penalty. They also disagree about many of the procedural and substantive legal requirements for imposing penalties pursuant to ORS 656.262(11)(a). As we explain below, we conclude that the board's imposition of the penalty is not supported by substantial reason because the board's order fails to "articulate a rational connection between the facts and the legal conclusions it draws from them." *Jenkins v. Board of Parole*, 356 Or 186, 195, 335 P3d 828 (2014) (internal quotation marks omitted). Consequently, we reverse and remand the case to the board to explain its reasoning, and we do not reach the parties' arguments about the legal requirements for imposing penalties pursuant to ORS 656.262(11)(a).

## I.  HISTORICAL AND PROCEDURAL FACTS

### A.  *Overview*

Before describing the historical and procedural facts in detail, we begin with an overview. This case arises out of an injury that claimant suffered while working for respondent Trimark Salem Hospitality LLC. Based on his injury, claimant sought workers' compensation benefits. SAIF provides workers' compensation insurance to Trimark, and SAIF initially paid claimant total temporary disability (TTD) benefits. But SAIF later ceased paying claimant TTD benefits because, as SAIF explained in a letter to claimant, Trimark had notified SAIF that claimant's employment had been terminated for disciplinary reasons. SAIF's cessation of TTD benefits was based on ORS 656.325 (5)(b), which requires an insurer to cease TTD benefits

if a claimant's employment was terminated for disciplinary reasons.

Claimant requested administrative review, challenging SAIF's cessation of TTD benefits and seeking a penalty for unreasonable claims processing and penalty-related attorney fees pursuant to ORS 656.262(11)(a). After a hearing, an administrative law judge (ALJ) affirmed SAIF's cessation of TTD benefits.

Claimant appealed to the board, which reversed the ALJ's order. The board concluded that there was insufficient evidence that claimant had been terminated for disciplinary reasons and, therefore, SAIF was not authorized to terminate TTD benefits. The board also imposed a penalty and penalty-related attorney fees on SAIF. SAIF and Trimark sought judicial review.

The Court of Appeals affirmed the board's conclusion that there was insufficient evidence that claimant had been terminated for disciplinary reasons, but it reversed the board's imposition of the penalty and penalty-related attorney fees. *SAIF v. Coria*, 315 Or App 546, 500 P3d 42 (2021). Claimant petitioned for review, which we allowed. On review, only the penalty and the penalty-related fees are at issue.

B.   *Historical Facts*

We are bound by the board's findings of historical fact if they are supported by substantial evidence in the record. *Garcia v. Boise Cascade Corp.*, 309 Or 292, 295-96, 787 P2d 884 (1990). "[S]ubstantial evidence supports a finding when the record, viewed as a whole, permits a reasonable person to make the finding." *Id.* at 295. Based on the board's findings and the undisputed evidence in the record, the relevant facts are as follows.[1]

In 2015, claimant began working for Trimark's hotel as a maintenance worker. His duties included monitoring and adjusting the chemical levels in the hotel pool. On June 10, 2018, claimant fell from a ladder at work and

---

[1] We note that the board's order states, "We adopt the ALJ's 'Findings of Fact' with the following summary and supplementation."

was injured. Claimant reported the injury to the hotel manager, Holmes, and completed an accident report that day. Three days later, on June 13, Trimark terminated claimant's employment.

On June 15, claimant sought medical treatment from a physician, who restricted claimant to modified duty work. Thereafter, SAIF began paying claimant TTD benefits.

On July 30, Trimark prepared a memo stating that it had light duty work that would have been available to claimant "had he not been terminated for violation of work place rules or other disciplinary reasons." On August 31, SAIF sent a letter to claimant that stated, in part:

> "Your employer has notified us that your employment was terminated for violation of work rules or other disciplinary reasons as of June 13, 2018, and suitable light duty work, approved by your attending physician, would have been available to you as of July 30, 2018, had you remained employed with the employer."

Therefore, the letter further stated, SAIF would not pay TTD benefits for time after July 30, 2018.

C.  *Proceedings Before the Administrative Law Judge*

Claimant sought administrative review of SAIF's cessation of TTD benefits, asserting that the cessation was not justified under ORS 656.325(5)(b) and that he was entitled to a penalty and penalty-related attorney fees under ORS 656.262(11)(a).

At a hearing before an ALJ, claimant testified that, on June 13—three days after his injury—he discovered his timecard was missing when he attempted to clock in for work. He then went to Holmes's office, where he met with Holmes and the hotel's assistant general manager, Rodriguez. He was handed a paycheck and told that his services were no longer needed. Claimant testified that he had no disciplinary history at work and that he was not given a reason for his termination or any papers regarding his termination.

Trimark and SAIF were represented at the hearing by the same lawyer. During his cross-examination of claimant, the lawyer questioned claimant about a pool maintenance form, which was subsequently admitted into the record as Exhibit A. Claimant admitted that he had made some entries on the form and that the form contained inaccurate information.

Trimark and SAIF's lawyer called two witnesses: Rodriguez and one of claimant's coworkers, Espino. Espino testified that he had noticed discrepancies in the hotel's pool maintenance records and identified Exhibit A as a maintenance form from April 2018. Espino also testified that the supply of testing powder was lasting longer than it would if the pool's chemical levels were being tested as required. In addition, Espino testified that, when a new company took over management of the hotel in April 2018, he reported the discrepancies in the pool records and was asked to periodically check claimant's pool readings and report any inaccuracies.

Rodriguez testified that, when the new company took over management of the hotel, claimant "took it a little harsh" because the new company's "expectations were a lot different" and things were more "by the book." Rodriguez further testified that she had been present on June 13, when claimant's employment was terminated and had served as an interpreter between Holmes and claimant, who speaks Spanish. Rodriguez testified that claimant had signed a document, which she translated for him, stating that he was being terminated for recording false pool log information and refusing to perform daily tasks that were assigned to him. Rodriguez did not make the decision to terminate claimant and did not know who did. Holmes did not testify; according to Rodriguez, Holmes had voluntarily ceased working for Trimark in July 2018, approximately four months before the hearing.

Although Rodriguez testified that claimant had signed a document stating the reasons for claimant's termination, Trimark and SAIF's lawyer informed the ALJ that the document was "not available" to them.

Trimark has a progressive discipline policy, the steps of which are oral reminder, written warning, and termination. The policy provides that certain violations may be grounds for immediate termination.

Throughout the hearing, the ALJ remarked on the lack of clarity regarding the reasons for claimant's termination. The ALJ stated that he was "not quite sure what the facts are" and that there were "missing links in this case on both sides" and "big holes on both sides."

To determine whether claimant was entitled to TTD benefits after July 30, 2018, the ALJ focused on whether SAIF had presented sufficient evidence that claimant's employment had been terminated for disciplinary reasons. In his order, the ALJ found that claimant had admitted falsifying pool maintenance records, and the ALJ noted that claimant had not disputed either Espino's testimony that there had been pool maintenance problems or Rodriguez's testimony that claimant had been told that his employment was terminated based on the pool maintenance records and his failure to perform his assigned duties. But the ALJ also acknowledged claimant's arguments that Trimark had known about the pool maintenance problems for months before terminating claimant's employment, had not complied with its own progressive discipline policy, and had failed to produce the document Rodriguez had described. The ALJ stated that, as he understood the board's case law, "if there is credible evidence in the record that the worker's employment was terminated for any disciplinary reasons, then the Board will not consider whether other factors might have influenced the employer's decision." Based on that understanding, the ALJ determined that, "while other factors may have contributed to its decision, the preponderance of the evidence supports a conclusion that claimant's employment was terminated for disciplinary reasons." Consequently, the ALJ denied claimant's requests for relief.

## D.  *Proceedings Before the Board*

Claimant appealed to the board, which reversed. In its order, the board began by stating that "[t]he only evidence in support of SAIF's position that claimant was terminated

for disciplinary reasons is the testimony of \* \* \* Rodriguez that claimant was given a document stating that he was being terminated for recording false pool logs and refusing to follow daily tasks." The board then noted that "[t]hat testimony was contested by claimant, who testified that he was not given any document reflecting the reasons for his termination" and that "[t]he alleged document was not offered into evidence, nor was any other documentation presented, which would reflect the grounds for claimant's termination." The board went on to note that the record also lacked any explanation regarding why, if Trimark's actions were based on the pool records, Trimark had not spoken to claimant, after it learned about the pool records in April 2018, or why it had departed from its progressive discipline policy. Based on the record before it, the board concluded that there was "insufficient evidence to conclude that claimant was discharged for violation of a work rule or for other disciplinary reasons."

The board then turned to the question of whether to order SAIF to pay a penalty and penalty-related attorney fees pursuant to ORS 656.262(11)(a) for unreasonable claims processing. Citing Court of Appeals cases, the board stated that

> "[t]he standard for determining an unreasonable resistance to the payment of compensation is whether, from a legal standpoint, the carrier had a legitimate doubt about its liability, [*International*] *Paper Co. v. Huntley*, 106 Or App 107, 110[, 806 P2d 188] (1991). 'Unreasonableness' and 'legitimate doubt' are to be considered in light of all the evidence available to the carrier. *Brown v. Argonaut* [*Insurance Company*], 93 Or App 588, 591[, 763 P2d 408] (1988)."

The board resolved the penalty issue in two sentences, followed by citations to three of its own cases: *Dustin E. Hall*, 68 Van Natta 1465, *adh'd to on recons*, 68 Van Natta 1615 (2016), *aff'd*, *SAIF v. Hall*, 289 Or App 842, 410 P3d 396, *rev den*, 363 Or 104 (2018); *Ricky J. Morin*, 68 Van Natta 1067 (2016); and *Peggy J. Baker*, 49 Van Natta 40 (1997). Specifically, the board stated:

> "We have found that the statutory prerequisite for ceasing TTD benefits under ORS 656.325(5)(b) has not been

established. Because the record does not identify any other basis for authorizing the termination of claimant's TTD benefits, we conclude that SAIF unreasonably resisted the payment of claimant's TTD benefits. *See Hall*, 68 Van Natta at 1474; *Morin*, 68 Van Natta at 1071 (a carrier's conversion of TTD to TPD benefits was unreasonable where the statutory prerequisite was not established); *Peggy J. Baker*, 49 Van Natta 40 (1995) (penalty for a carrier's unreasonable failure to pay TTD benefits was assessed because the carrier was legally imputed with the employer's knowledge and conduct regarding the unsupported reasons for the claimant's employment termination)."

Thus, the board's stated reasoning was that, because "the statutory prerequisite for ceasing TTD benefits under ORS 656.325(5)(b) has not been established" and "the record does not identify any other basis" for ceasing the benefits, SAIF acted unreasonably when it ceased the benefits. Based on that reasoning, the board imposed a penalty in the amount of 25 percent of the TTD benefits that it was awarding claimant. It also imposed penalty-related attorney fees.

E.   *Proceedings in the Court of Appeals*

SAIF and Trimark petitioned the Court of Appeals for judicial review of the board's order.[2] In its first assignment of error, SAIF asserted that the board had erred in concluding that there was insufficient evidence to prove that claimant had been terminated for disciplinary reasons. The Court of Appeals rejected that assignment. It explained that, given the competing evidence in the record, the board could reasonably conclude that SAIF had failed to produce sufficient evidence that claimant had been terminated for disciplinary reasons. *Coria*, 315 Or App at 552-53.

In its second assignment of error, SAIF asserted that the board had erred in ordering SAIF to pay a penalty for unreasonable claims processing and penalty-related attorney fees. When addressing that issue, the Court of Appeals reiterated rules from its earlier cases:

---

[2] In the appellate courts, SAIF and Trimark have been represented by the same lawyer and filed joint briefs. For ease of reference, when describing the appellate proceedings and arguments, we refer to SAIF and Trimark collectively as SAIF, unless the context requires otherwise.

"The standard for determining whether SAIF acted reasonably when it discontinued claimant's TTD benefits under ORS 656.325(5)(b) is 'whether, from a legal standpoint, [SAIF] ha[d] a legitimate doubt as to its liability.' *Travelers Ins. Co. v. Arevalo*, 296 Or App 514, 523, 437 P3d 1153 (2019). Unreasonableness and legitimate doubt are to be 'considered in the light of all the evidence available to the insurer.' *Hamilton v. Pacific Skyline, Inc.*, 266 Or App 676, 681, 338 P3d 791 (2014) (citing *Brown*[, 93 Or App at 591])."

*Coria*, 315 Or App at 553-54 (first and second brackets in *Coria*).

As the Court of Appeals understood the board's order, "the board awarded a penalty and penalty-related attorney fees under ORS 656.262(11)(a), on the legal theory that Trimark's reason for terminating claimant's employment is imputed to SAIF, as Trimark's insurer. The primary issue raised by SAIF's petition for [judicial] review is whether the imputed knowledge theory was properly applied by the board." *Coria*, 315 Or App at 552.

In addressing that issue, the Court of Appeals noted that *Peggy J. Baker*—one of the decisions cited by the board—had relied, in turn, on *Anfilofieff v. SAIF*, 52 Or App 127, 627 P2d 1274 (1981), and *Nix v. SAIF*, 80 Or App 656, 723 P2d 366, *rev den*, 302 Or 158 (1986). In those two cases, the court had construed a predecessor to ORS 656.262(11)(a) and upheld penalties against an insurer where the employer had provided false information or delayed in reporting a compensable accident contrary to statute. *Coria*, 315 Or App at 555. According to the court, it had essentially concluded that penalties against an insurer are authorized "'to the extent unreasonable conduct of a contributing or noncontributing employer causes or contributes to the delay or refusal of compensation.'" *Id.* (quoting *Anfilofieff*, 52 Or App at 135).

But the Court of Appeals held that this case differs from *Anfilofieff* and *Nix* because the record does not contain a finding of unreasonable conduct by Trimark that could be imputed to SAIF:

"[T]he board did not find that [employer] terminated claimant's employment in retaliation for his filing a workers'

compensation claim or that it otherwise acted unreasonably or engaged in any sort of misconduct. It found only that 'the statutory prerequisite for ceasing TTD benefits under ORS 656.325(5)(b) has not been established' and that 'the record does not identify any other basis' for discontinuing TTD benefits. That is not the same as finding employer misconduct in the claims process. The erroneous termination of benefits is not, *ipso facto*, evidence of misconduct. Additionally, the absence of a finding about why claimant was terminated is not itself evidence of employer misconduct. The absence of a finding of employer misconduct distinguishes this case from *Anfilofieff* and *Nix* and leads us to conclude that there is no misconduct to attribute to SAIF."

*Id.* at 556. Therefore, the court affirmed the board's award of additional TTD but reversed its imposition of the penalty and penalty-related attorney fees. *Id.* Claimant petitioned for review, which we allowed.

## II.   ANALYSIS

On review, the parties disagree about what the board actually did in its order. Claimant argues that the board correctly imposed the penalty on SAIF because SAIF itself acted unreasonably. Claimant acknowledges that the board's order cites *Peggy J. Baker*—which the board described as a case in which a "penalty for a carrier's unreasonable failure to pay TTD benefits was assessed because the carrier was legally imputed with the employer's knowledge and conduct regarding the unsupported reasons for the claimant's employment termination"—but claimant asserts that the board did not need to, and did not in fact, impute Trimark's knowledge and conduct to SAIF. According to claimant, the order

"does not read in any way that it imputed any knowledge. Rather, the board penalized the insurer for the insufficient evidence it had to trigger ceasing [TTD] benefits. The board did not penalize insurer for information had by the employer but not the insurer."

Based on that reading, claimant contends that

"the board applied a correct legal standard under ORS 656.262(11)(a), because it determined that an insurer's claim processing decision is not reasonable when it fails to

meet the terms of a statute and when the insurer fails to provide any basis that its claims processing decision was nevertheless reasonable at the time it was made."

In response, SAIF argues that the board erred because, when determining whether SAIF acted unreasonably, the board did not focus on what SAIF knew at the time it ceased paying claimant's TTD benefits, but instead focused on the evidence that the parties later presented at the hearing before the ALJ. According to SAIF, an insurer "can be found wrong about whether it should have ceased payments but still reasonable in its decision at the time the decision was made." SAIF also argues that, contrary to the Court of Appeals' decision in *Anfilofieff*, the board cannot impute an employer's knowledge or conduct to an insurer.

As we will explain below, we decline to address the merits of the parties' arguments about whether the board erred, and the extent to which "imputed knowledge" is a viable basis for determining an insurer to have acted unreasonably, because we conclude that the board's order lacks an explanation of its reasoning sufficient to allow appellate review.

We review board orders for substantial evidence and errors of law. ORS 183.482(8)(a), (c); *see also* ORS 656.298(7) (review of board orders "shall be as provided in ORS 183.482(7) and (8)"). Implicit in the requirement that orders be supported by substantial evidence is an additional requirement that they be supported by "substantial reason." *Jenkins*, 356 Or at 195-96, 201. An order is supported by substantial reason when it "articulate[s] a rational connection between the facts and the legal conclusions it draws from them." *Id.* at 195 (internal quotation marks omitted). Among other purposes, the substantial-reason requirement ensures "meaningful judicial review." *Id.* (internal quotation marks omitted); *see id.* at 195-96 (explaining that, "to the extent that the substantial reason requirement inheres in an agency's duty to make findings of fact and conclusions of law, the substantial reason requirement concerns the reviewability of the agency's orders").

Here, as the parties' competing interpretations of the board's order indicate, the order is unclear. It is possible

that, as claimant argues, the board imposed a penalty on SAIF without relying on an imputed-knowledge or imputed-conduct theory. But if it did, it failed to explain why SAIF's conduct was unreasonable given what SAIF knew at the time it ceased paying TTD benefits. The record contains undisputed evidence that SAIF ceased paying TTD benefits because Trimark had informed SAIF that claimant had been terminated for disciplinary reasons. The board's order purports to apply the Court of Appeals' "legitimate doubt" standard, which depends on an "insurer's knowledge at the time that it acts." *Liberty Northwest Ins. Corp. v. Hughes*, 197 Or App 553, 558, 106 P3d 687, *rev den*, 338 Or 488 (2005) (citing *Brown*, 93 Or App at 591). But the order does not explain why the information that Trimark reported to SAIF did not give SAIF a legitimate doubt about its liability at the time it ceased paying the benefits. The board seems to have focused on the evidence presented at the administrative hearing, but its order does not explain why it did so.

It is also possible that, as SAIF argues, the board relied on an imputed-knowledge or imputed-conduct theory. But if it did, it failed to explain what it imputed to SAIF. As discussed, when determining whether SAIF had the authority to cease paying TTD benefits, the board concluded that "*there [was] insufficient evidence to conclude* that claimant was discharged for a violation of a work rule or for other disciplinary reasons." (Emphasis added.) But that conclusion is not the same as a factual finding that claimant's employment *was not actually terminated for violation of a work rule or for other disciplinary reasons*. Stated generally, if a party fails to prove that X caused Y, that does not mean that X did not actually cause Y; it only means that the evidence was insufficient to prove that X caused Y. The failure of proof is not proof of the opposite. Here, there was conflicting evidence about the reasons for claimant's termination. As the ALJ observed, there were "missing links" and "big holes" on "both sides." The board did not make a finding about the reasons claimant's employment was terminated, and the board's order fails to explain how it could impute knowledge of the reasons for the termination to SAIF without a finding about what those reasons were.

In sum, the board's order is not supported by substantial reason, because it fails to articulate a rational connection between its findings of fact and its legal conclusions. As just discussed, the board purported to apply the "legitimate doubt" standard, which turns on what an insurer knew when it acted, but the board's order does not explain why, given the undisputed evidence of what SAIF knew when it acted, SAIF did not have a legitimate doubt about its liability. And, if the board did not rely on what SAIF knew, but instead relied on an imputed-knowledge theory, it did not explain how it could conclude that SAIF knew that claimant had not been terminated for disciplinary reasons when the record does not contain a finding about the reason claimant was terminated.

Therefore, we reverse the Court of Appeals' decision and the board's order, and we remand the case to the board to explain its reasoning. *See Jenkins*, 356 Or at 195 (explaining that, if an order is not supported by substantial reason, "the appellate court will reverse and remand the order for the agency to correct the deficiency").

Before closing, we pause to note that, in addition to disagreeing about the board's reasoning, the parties disagree about many of the procedural and substantive legal requirements for imposing a penalty pursuant to ORS 656.262 (11)(a). Among other things, they disagree about (1) which party bears the burden of proving that an insurer's claims processing was unreasonable, (2) what that party must show to establish that the claims processing was unreasonable, and (3) in what circumstances, if any, an employer's knowledge or conduct can be imputed to an insurer. We express no opinion on those disagreements; we note them so that the board is aware of them and can clearly set out its understanding of the legal requirements in its order on remand.[3]

The decision of the Court of Appeals is reversed. The order of the Workers' Compensation Board is reversed, and the case is remanded to the Workers' Compensation Board for further proceedings.

---

[3] We further note that, although the concurrence addresses some of the parties' disagreements, the court takes no position on how the concurrence would resolve them.

**BUSHONG, J.,** concurring.

I agree with the majority opinion that the board has not adequately explained its reasons for concluding that SAIF is liable for a penalty and attorney fees for "unreasonably refus[ing] to pay compensation" under ORS 656.262 (11)(a). I write separately to address (1) whether and how the "imputed misconduct" principle adopted in *Anfilofieff v. SAIF*, 52 Or App 127, 627 P2d 1274 (1981), might apply in this situation; and (2) how the "legitimate doubt" standard that the Court of Appeals cited in determining whether SAIF acted unreasonably (*SAIF v. Coria*, 315 Or App 546, 553-54, 500 P3d 42 (2021)), might apply in this context.

In *Anfilofieff*, SAIF had denied a claim for workers' compensation benefits "based on the reports from employer and its own investigation." 52 Or App at 135. Among other things, the employer (1) "did not truthfully describe the cause of the injury or his relationship with claimant in the report to SAIF"; (2) "altered the scene [of the injury] to cover up the true facts"; and (3) "gave false information to the doctor as to how the injury occurred." *Id.* The Court of Appeals concluded that the employer's conduct (1) "was clearly unreasonable and was designed to avoid responsibility for the injury"; and (2) "was a contributing cause of the denial of compensation and the consequent delay." *Id.*

Thus, the claimant was "entitled to penalties for unreasonable denial of his claim." *Id.* The court acknowledged that the statute, "[r]ead literally," does not address penalties against SAIF for an employer's misconduct, but it "interpret[ed] the statute to authorize penalties to be paid by SAIF to the extent unreasonable conduct of a contributing or noncomplying employer causes or contributes to the delay or refusal of compensation." *Id.*[1]

In this case, it is undisputed that SAIF terminated claimant's temporary total disability (TTD) benefits

---

[1] The dissenting opinion stated that the literal reading of the statute acknowledged by the majority "should settle it." *Anfilofieff*, 52 Or App at 136 (Gillette, J., dissenting). In the dissent's view, the legislature rationally could have intended to make SAIF "responsible for its *own* unreasonable actions, without making SAIF responsible for paying penalties for acts over which it—uniquely, in this system—had no control." *Id.* at 136-37 (emphasis in original).

pursuant to ORS 656.325(5)(b) after the employer (Trimark) reported to SAIF that claimant had been discharged for a violation of work rules or for other disciplinary reasons. In restoring benefits, the board concluded that "there [was] insufficient evidence to conclude that claimant was discharged for violation of a work rule or for other disciplinary reasons."

In reaching that conclusion, the board cited several suspicious facts. It noted that claimant had worked at Trimark's hotel for three years without any disciplinary history. It also noted that the one instance of misconduct—inaccurately completing a pool maintenance log—occurred in April 2018, two months before Trimark discharged claimant. It further noted that Trimark did not counsel or discipline claimant consistent with its progressive discipline policy about his pool maintenance duties. Instead, as the board noted, Trimark discharged claimant three days after he sustained a compensable injury at work and completed an accident report.

The board also noted that Trimark offered "no testimony regarding the reasons for the discharge from the individual who made the decision to terminate claimant's employment (indeed, the record does not even establish who that individual was)." Those facts, taken together, could support an inference that the employer in fact discharged claimant not for violating a work rule or for other disciplinary reasons, but in retaliation for filing a workers' compensation claim.

But, as the Court of Appeals noted, "the board did not find that Trimark terminated claimant's employment in retaliation for his filing a workers' compensation claim or that it otherwise acted unreasonably or engaged in any sort of misconduct." *Coria*, 315 Or App at 556. Although the board is bound by decisions of the Court of Appeals, it is not required to apply *Anfilofieff* here because, as the Court of Appeals noted, "[t]he absence of a finding of employer misconduct distinguishes this case from *Anfilofieff*[.]" 315 Or App at 556. And I do not believe that the "imputed misconduct" principle adopted in *Anfilofieff* necessarily means that

all the employer's *conduct* and *knowledge* should be imputed to SAIF.[2]

That brings me to the "legitimate doubt" standard.[3] SAIF argues that its reliance on Trimark's statement that it discharged claimant for violating work rules or for other disciplinary reasons is sufficient to establish that SAIF had a "legitimate doubt"—and thus did not act unreasonably—when it decided to discontinue claimant's TTD benefits. Claimant argues, among other things, that the board's finding of insufficient evidence to support a determination that Trimark discharged claimant for violating work rules or for other disciplinary reasons is sufficient to establish that SAIF acted unreasonably.

Although the board generally is bound by Court of Appeals decisions, it is not required to apply the "legitimate doubt" standard in the way advocated by either party. I agree with SAIF that its reliance on Trimark's statement is enough to cause SAIF to "doubt" whether it should continue paying TTD benefits. I agree with claimant that SAIF's reliance on Trimark's statement, standing alone, is insufficient to establish that its doubt was legitimate. The question under the statute is whether SAIF acted unreasonably. I do not think that the board's decision that there was insufficient evidence that the claimant was terminated for violating work rules or for other disciplinary reasons is enough, standing alone, to establish that SAIF acted reasonably or unreasonably.

_____

[2] The Court of Appeals in *Anfilofieff* read the statute "in the context of SAIF's function as an automatic insurer of noncomplying employers" to mean that "SAIF stands in the shoes of the noncomplying employer for the purposes of accepting or denying the claim." 52 Or App at 134. That statement—made without the benefit of any detailed analysis of the text, context, or legislative history of the statute—may or may not be an accurate assessment of the legislature's intent. I would not read the statute to necessarily mean that the employer's conduct and knowledge are always imputed to the insurer in all contexts without a more in-depth analysis of the text, context, and history of the statute.

[3] The Court of Appeals has applied the "legitimate doubt" standard in several cases, tracing back to *Norgard v. Rawlinsons*, 30 Or App 999, 569 P2d 49 (1977). There, the court stated the following: "As long as insurer * * * had a legitimate doubt, from a legal standpoint, of its liability, its conduct was not unreasonable." *Id.* at 1003. The court explained in a footnote that (1) California's workers' compensation statute is "similar in wording" to the Oregon statute at issue; and (2) "California courts have found that legal doubt as to liability for compensation may establish the reasonableness of an insurer's conduct." *Id.* at 1003 n 1.

In my view, this issue should be resolved by clearly identifying and applying the burden of proof. The general rule in workers' compensation cases is that "the burden of proof is upon the proponent of a fact or position, the party who would be unsuccessful if no evidence were introduced on either side." *Harris v. SAIF*, 292 Or 683, 690, 642 P2d 1147 (1982). Although the board's order does not state the burden expressly, the order appears to put the initial burden on SAIF—the proponent of the position that it properly terminated TTD benefits—to establish what the board treated as a "prerequisite" to terminating benefits.[4]

Assuming—as the board and the Court of Appeals assumed—that SAIF has that initial burden, then SAIF may also have the burden of establishing that it acted reasonably for purposes of the penalty provision in ORS 656.262(11)(a). If that is the case—and the board's order is unclear on this point—then the board should explain why the evidence here was insufficient to meet that burden. In my view, if SAIF has the burden to establish that its decision to terminate benefits—while incorrect—was reasonable under the circumstances, simply accepting the employer's statement without putting on evidence of what made its erroneous decision reasonable would be insufficient to meet that burden.

On the other hand, if the board treats the claimant as the proponent of a request for a penalty—thereby placing the burden on the claimant to prove that SAIF acted unreasonably—it may be appropriate, in my view, to shift the burden to SAIF to establish that its decision to terminate benefits—while incorrect—was nonetheless reasonable under the circumstances. That would require SAIF to come forward with evidence of what, if anything, it did to determine whether the employer's statement was supported by

---

[4] The Court of Appeals stated that it understood the board's conclusion that the record contains insufficient evidence to conclude that claimant was discharged for violating work rules or for other disciplinary reasons "to reflect its view that SAIF failed to produce sufficient evidence that its decision to discontinue claimant's TTD benefits was based on a disciplinary termination." *Coria*, 315 Or at 552. That assumes—without stating expressly—that the burden was on SAIF to establish that the employer terminated claimant's employment for disciplinary reasons.

evidence. If SAIF does not meet its burden, it may be liable for a penalty and attorney fees.

We have previously applied a burden-shifting approach under a different provision of the workers' compensation statute. ORS 656.802(4) creates a presumption that a firefighter's medical condition resulted from his or her employment once the firefighter establishes certain predicate facts. The statute further provides that denial of a claim must "be on the basis of clear and convincing medical evidence that the cause of the condition or impairment is unrelated to the firefighter's employment." ORS 686.802(4). In *SAIF v. Thompson*, 360 Or 155, 379 P3d 494 (2016), we understood those words to mean that, once a claimant established the predicate facts, "then the presumption shifted both the burden of production and the burden of persuasion to the employer" to prove that the condition was unrelated to the firefighter's employment. *Id.* at 160.

The statute here—ORS 656.262(11)(a)—does not provide for a "presumption" that would shift the burden to the employer, as in *Thompson*. Instead, the statute simply states:

> "If the insurer or self-insured employer unreasonably delays or unreasonably refuses to pay compensation * * * or unreasonably delays acceptance * * * of a claim, the insurer or self-insured employer shall be liable for an additional amount up to 25 percent of the amounts then due plus any attorney fees assessed under this section."

Under ORS 656.262(11)(a), in my view, where SAIF fails to establish that it properly denied compensation—or, as in this case, correctly terminated TTD benefits—the burden should be on SAIF to establish that its actions were nonetheless reasonable. The board's *finding* that the decision to terminate benefits was incorrect is stronger than the *presumption* that a firefighter's condition was work-related that was sufficient to shift the burden in *Thompson*.

Moreover, placing the burden on the insurer makes sense in this context because the insurer—not the claimant—knows why it took the actions that it took. It has exclusive control over the facts demonstrating whether its decision was reasonable or unreasonable. Placing the burden on the

insurer also provides an incentive for the insurer to conduct its own investigation into whether it can cease paying benefits to a claimant, instead of just relying on the employer's statements.

In any event, clearly identifying and applying the burden of proof in this context—and adopting a burden-shifting approach, if necessary—makes more sense, in my view, than applying an "imputed knowledge" principle. It also makes more sense than either of the approaches advocated by SAIF and by the claimant in this case.

Having made those points, I concur in the majority opinion.