***This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).***

Argued and submitted May 10, affirmed August 30, 2023

In the Matter of the Nonsubjectivity Determination of Alejandro Mendoza, Claimant.

Alejandro MENDOZA,
*Petitioner,*

*v.*

RON DICKSON CORPORATION
and Department of Consumer and Business Services, Workers' Compensation Division,
*Respondents.*

Workers' Compensation Board
2100004SD; A178587

Martie McQuain argued the cause for petitioner. Also on the briefs was Moore & McQuain.

Matthew L. Williams argued the cause for respondent Ron Dickson Corporation. Also on the brief were William H. Replogle and Tolleson Conratt & Replogle, LLP.

Denise G. Fjordbeck, Assistant Attorney General, waived appearance for respondent Department of Consumer and Business Services.

Before Powers, Presiding Judge, and Hellman, Judge, and Armstrong, Senior Judge.

POWERS, P. J.

Affirmed.

Hellman, J., dissenting.

**POWERS, P. J.**

Claimant petitions for judicial review of a final order of the Director of the Department of Consumer and Business Services. In that order, the director affirmed the Workers' Compensation Division's nonsubjectivity determination that claimant was not a subject worker of Ron Dickson Corporation (RDC) and that RDC was not a subject employer.[1] In the first assignment of error, claimant argues that the director's determination that RDC did not remunerate claimant for his services and that, therefore, claimant was not a worker of RDC lacked substantial evidence and reason. In the second assignment of error, claimant contends that the director subsequently erred in failing to consider whether claimant was subject to RDC's direction and control. After reviewing the record, we conclude that the director's determination that RDC did not remunerate claimant for his services was supported by substantial evidence and reason. That conclusion obviates the need to address claimant's second assignment of error. Accordingly, we affirm.

Because the parties are familiar with the factual and procedural background, we do not provide an in-depth recitation for this nonprecedential memorandum opinion. We review an agency's findings of fact for substantial evidence and reason. *See* ORS 183.482(8)(c) (providing that "[s]ubstantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding"). In reviewing for substantial reason, we determine whether the director provided a rational explanation of how the factual findings lead to the legal conclusions. *See Arms v. SAIF*, 268 Or App 761, 767, 343 P3d 659 (2015) (so stating); *see also Drew v. PSRB*, 322 Or 491, 500, 909 P2d 1211 (1996) (explaining that agencies "are required to demonstrate in their opinions the reasoning that leads the agency from the facts that it has found to the conclusions that it draws from those facts" (emphasis omitted)).

---

[1] In their briefs, the parties refer to the order on review as the order of the Workers' Compensation Division. The order on review, however, was issued by an administrative law judge in the Hearings Division of the Workers' Compensation Board and is consequently "deemed to be a final order of the director." ORS 656.740(5)(a). For that reason, we refer to the order on review as being that of "the director" rather than that of "the division."

Having reviewed the record, we conclude that substantial evidence and reason support the director's order that found that RDC did not remunerate claimant. Although there is evidence in the record that can be viewed to support claimant's contention, that is not how our standard of review applies. Rather, under ORS 183.482(8)(c), we affirm the director's order where the record, viewed as a whole, would permit a reasonable person to make that finding. Unlike the dissenting opinion, we conclude that there is evidence in the record that supports the director's factual finding that RDC did not remunerate claimant. Accordingly, claimant was not a "worker" of RDC as that term was defined by ORS 656.005(30) (2019).[2] Finally, our conclusion on claimant's first assignment of error obviates the need to address whether claimant was subject to RDC's direction and control.

Affirmed.

**HELLMAN, J.,** dissenting.

I respectfully dissent. In my view, the director committed legal error and its decision is not supported by substantial evidence or substantial reason. Because the evidence establishes as a matter of law that Ron Dickson Corporation (RDC) provided remuneration to claimant, I would reverse and remand for the director to determine whether the second part of ORS 656.005(30) (2019) has been met in this case.

The undisputed facts are drawn from the record. RDC is a construction and consultation business operated by Ron Dickson who acts as the business' president and secretary. Dickson generally operates independently, but occasionally uses a temp agency to staff the workers he needs

---

[2] ORS 656.005(30) (2019) has since been amended and, as a result, that provision is now numbered as ORS 656.005(28)(a). Or Laws 2021, ch 257, § 1. As the director's order accurately observes, however, the substantive law in effect at the time of the injury governs. *See* ORS 656.202(2) (providing that "payment of benefits for injuries or deaths under this chapter shall be continued as authorized, and in the amounts provided for, by the law in force at the time the injury giving rise to the right to compensation occurred"). The statute in effect at the time of claimant's injury provided, in part, "'[w]orker' means any person, * * * who engages to furnish services for a remuneration, subject to the direction and control of an employer." ORS 656.005(30) (2019).

for his projects. Dickson was hired by Jeremy Bittermann to provide consulting and supervision services for retrofitting the foundation of Bittermann's house. Dickson was to perform those services while Bittermann was working outside of Oregon. Bittermann provided Dickson with a list of projects that needed to be completed, as well as a $10,000 check and $5,000 in cash to pay for labor for the project, and Dickson's $60.00 per hour compensation. He also gave Dickson access to a credit card to pay for supplies. Dickson deposited the $10,000 check in the RDC bank account and put the $5,000 cash in a safe.

Dickson determined the number of people he needed for the job and hired claimant and two other men to complete the retrofit. He agreed to pay claimant $20 per hour and the other two workers $30 per hour. Dickson set claimant's schedule and compensation rate, told claimant what work needed to be done, and showed claimant how to accomplish that work. Claimant used Bittermann's tools while on the job site, although he understood them to have been provided by Dickson. Dickson kept Bittermann informed about the progress of the work by emailing him every few days. He paid claimant with checks from the RDC bank account and cash from the safe.

While working on site, claimant injured his back lifting a cabinet. Claimant texted Dickson to inform him of the injury. When claimant did not return to work, Dickson considered him terminated from the project. At that point, Dickson texted Bittermann to tell him that he was looking to borrow money to pay claimant's final wages.

Claimant filed a workers' compensation claim naming RDC as his employer. The Department of Consumer and Business Services (DCBS) conducted an investigation which involved interviewing Bittermann, Dickson, and claimant. The DCBS investigator concluded that RDC was not a subject employer under the workers' compensation statute because Dickson was acting as Bittermann's agent and it was Bittermann, as principal, who had the right to direct and control claimant. Claimant appealed that decision to the Workers' Compensation Board and, after holding a hearing, the director issued an order concluding that RDC was

not a subject employer under ORS 656.005(30) (2019) (defining "worker"). Specifically, the director concluded that:

"In the present case, the evidence establishes that Mr. Bittermann, not RDC, provided the compensation that was used to pay claimant's wages. None of the money paid to claimant came from any source besides Mr. Bittermann. The fact that Mr. Dickson deposited the $10,000.00 check Mr. Bittermann provided to him to use to pay wages into the RDC account, and that some of claimant's pay was then paid by a check drawn on this account, does not mean that RDC agreed to pay remuneration to claimant. Mr. Dickson was not acting in his capacity as President and Secretary of RDC when he supervised the demolition work and when the remuneration was provided; he was acting as an agent and 'pass-through' for Mr. Bittermann, while Mr. Bittermann was out of the country on a photography assignment.

"In summary, the alleged employer, RDC, did not 'remunerate' claimant. Because the first component of the definition of 'worker' set forth in ORS 656.005(30) [(2019)] has not been established, claimant cannot be considered a 'worker.' There consequently is no need to address the 'right to control' and 'nature of the work' tests that would determine whether the second component of the ORS 656.005(30) [(2019)] definition would be met."

We review the director's legal conclusions for errors of law and its factual findings for substantial evidence in the record. *SAIF v. Harrison*, 299 Or App 104, 105, 448 P3d 662 (2019) (citing ORS 183.482(8)(a), (c)); *NAES Corp v. SCI 3.2 Inc.*, 303 Or App 684, 687, 465 P3d 246, *rev den*, 366 Or 826 (2020). "Substantial evidence supports a finding when the record, viewed as a whole, permits a reasonable person to make the finding." *Garcia v. Boise Cascade Corp.*, 309 Or 292, 295, 787 P2d 884 (1990). "An order is supported by substantial reason when it 'articulate[s] a rational connection between the facts and the legal conclusions it draws from them.'" *SAIF v. Coria*, 371 Or 1, 12, 528 P3d 785 (2023) (citing *Jenkins v. Board of Parole*, 356 Or 186, 195-96, 335 P3d 828 (2014)); *see also Arms v. SAIF*, 268 Or App 761, 767, 343 P3d 659 (2015) (noting that in a substantial reason review "we determine whether the board provided a rational explanation of how its factual findings lead to the legal conclusions on which the order is based").

First, the director committed legal error when it based its decision on the source of the money instead of the act of remuneration. The statute in effect at the time of claimant's injury provided, in part, "'[w]orker' means any person, \* \* \* who engages to furnish services for a remuneration, subject to the direction and control of an employer \* \* \*." ORS 656.005(30) (2019). The statute contains no language regarding the initial source of the money that eventually becomes the remuneration in any given situation. Rather, the statute focuses on the agreement between the person doing the work and the entity providing the remuneration. In my view, the correct analysis under ORS 656.005(30) (2019) leads to a conclusion that claimant engaged to furnish services for remuneration from RDC. I reach that conclusion as follows.

The undisputed facts establish that Bittermann hired Dickson to oversee and complete a project at his house. As a matter of law, then, Dickson was operating as a contractor for Bittermann. A contractor is

> "[a] person that, for compensation or with the intent to sell, arranges or undertakes or offers to undertake or submits a bid to construct, alter, repair, add to, subtract from, improve, inspect, move, wreck or demolish, for another, a building, highway, road, railroad, excavation or other structure, project, development or improvement attached to real estate or to do any part thereof."

ORS 701.005(5); *Randall v. Ocean View Construction Co.*, 196 Or App 153, 159, 100 P3d 1088 (2004). As a contractor, Dickson was a legally significant break in the link between Bittermann and claimant for purposes of determining employment. By hiring Dickson, Bittermann was not hiring or paying any workers directly. Instead, Dickson, the contractor, found and hired the people to do the work for the construction project. Moreover, Dickson used RDC's business account—the business account of a construction company—to issue checks to the people who actually did the work. Those facts establish that RDC provided remuneration to claimant and was thus his employer.

The director's findings to the contrary are not supported by substantial evidence. For example, the director

found that "the evidence establishes that Mr. Bittermann, not RDC, provided the compensation that was used to pay claimant's wages." But no reasonable person could make that finding on the record before the director. That is because once Dickson deposited the money into RDC's business account the money ceased to be Bittermann's money or Dickson's personal money. It became RDC's money. And the undisputed evidence showed that RDC issued claimant's checks. Relatedly, the director's finding that the evidence "does not mean that RDC agreed to pay remuneration to claimant" is also unsupported by the record. What more evidence of an agreement is needed beyond the fact that RDC, in fact, paid remuneration to claimant when the check was issued from RDC's business account? In my view, none.

In addition, no reasonable person could find that when claimant was paid from the RDC bank account, he was somehow paid by Bittermann, personally, as the homeowner. How can that be? There was no evidence that Bittermann had any control over RDC's bank account, and in any event, how could a *business* account function as a *personal* payment mechanism? Similarly, the finding that "Dickson was not acting in his capacity as President and Secretary of RDC * * * when the remuneration was provided" is also not supported by substantial evidence. Under what authority, then, did Dickson sign the RDC business account check?

The underlying problem with those findings is that they required the director to implicitly find, and approve of, Dickson using RDC's business account for personal purposes, either his own, or Bittermann's. While it may not technically be illegal to use a business account for personal purposes, it is certainly questionable. Imputing such questionable actions to Dickson is not reasonable factfinding in this context.

To be sure, Dickson testified that he did not believe he was acting in his role as RDC's president during the scope of this process. To me, that evidence is irrelevant in this case. Whatever informal understanding existed between Bittermann and Dickson about their respective roles in this process plays no role in the legal analysis of whether claimant was remunerated by RDC. Dickson's subjective intent

surrounding his actions does not control the legal analysis. *Chelius v. Employment Dept.*, 258 Or App 72, 79, 308 P3d 290 (2013). Here, the director's decision impermissibly elevates the subjective understanding that Dickson had about his arrangement with Bittermann over the objective facts in the record.

In addition, the director's conclusion that Dickson was Bittermann's agent and acted as a "pass-through" is not supported by substantial reason. Determining an agency relationship is a complex question of both law and fact which requires consideration of several factors, including the existence of consent, either express, implied, or apparent, and the scope of such consent. *See, e.g.*, *Eads v. Borman*, 351 Or 729, 735-36, 277 P3d 503 (2012) (summarizing basic tests for an agency relationship). Nowhere in the director's opinion is there any recognition of the legal test for an agency relationship, let alone the required fact-finding or analysis that could lead the director to conclude that there was an agency relationship between Bittermann and Dickson. In addition, the director gives no explanation as to where it finds support for the concept of agency or a "pass-through" in the law as it relates to workers' compensation, which is an area of law in which statutes and regulations have supplanted most of the common law rules. Conclusions without any legal or factual explanation are not supported by substantial reason.

In sum, the director committed legal error when it relied on the source of the money instead of the act of remuneration to conclude that RDC was not a subject employer under the workers' compensation statute. Further, neither substantial evidence nor substantial reason supports the director's decision. Instead, as a matter of law, this record establishes that RDC remunerated claimant. For those reasons, I would reverse and remand for the director to determine whether the second part of ORS 656.005(30) (2019) has been met in this case.